IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION

CHARLIE PHILPOT,

    Plaintiff,

v.

DON JARRIEL; WAYNE JOHNSON;
JAMES THOMPSON; and ANGIELEA
HENRY,

    Defendants.

:
:
:
:
:
:
:
:
:
:
:
:
:
:

CIVIL ACTION NO.: CV609-040

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, who is currently incarcerated at Phillips State Prison in Buford, Georgia, filed a cause of action pursuant to 42 U.S.C. § 1983 contesting certain conditions of his confinement while he was housed at Smith State Prison in Glennville, Georgia. Defendants filed a Motion for Summary Judgment, and Plaintiff filed a Response. For the reasons which follow, Defendants' Motion should be **GRANTED**.

## STATEMENT OF THE CASE

Plaintiff contends that, despite being assigned a bottom range and bottom bunk profile due to a knee injury, he was assigned a bunk on the upper range. Plaintiff further contends that on March 12, 2009, he fell head first down a flight of metal stairs. Plaintiff asserts that he had notified Defendants Don Jarriel, Wayne Johnson, Angielea Henry, and James Thompson that he was improperly assigned to an upper range bunk and they did nothing to fix the situation. (Doc. No. 1, pp. 4-5).

AO 72A
(Rev. 8/82)

Defendants assert that Plaintiff's deliberate indifference claim falls on the merits. In the alternative, Defendants contend that they are protected from suit by qualified immunity and the Eleventh Amendment.

## STANDARD OF REVIEW

Summary judgment should be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving part[ies are] entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); Midrash Sephardi, Inc. v. Town of Surfside, 366 F.3d 1214, 1223 (11th Cir. 2004). An issue of fact is "material" if it might affect the outcome of the case, and an issue of fact is "genuine" when it could cause a rational trier of fact to find in favor of the nonmoving party. Hickson Corp. v. Northern Crossarm Co., Inc., 357 F.3d 1256, 1259-60 (11th Cir. 2004). The court must determine "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Id. at 1260 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

The moving parties bear the burden of establishing that there is no genuine issue of material fact and that they are entitled to judgment as a matter of law. Williamson Oil Co., Inc. v. Philip Morris USA, 346 F.3d 1287, 1298 (11th Cir. 2003). Specifically, the moving parties must identify the portions of the record which establish that there are no genuine issues of material fact. Hickson, 357 F.3d at 1260 (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). When the nonmoving party would have the burden of proof at trial, the moving parties may discharge their burden by showing that the

AO 72A
(Rev. 8/82)

record lacks evidence to support the nonmoving party's case or that the nonmoving party would be unable to prove his case at trial. Id. In determining whether a summary judgment motion should be granted, a court must view the record and all reasonable inferences that can be drawn from the record in a light most favorable to the nonmoving party. Acevado v. First Nat'l Bank, 357 F. 3d 1244, 1247 (11th Cir. 2004).

## DISCUSSION AND CITATION TO AUTHORITY

Defendants assert that Plaintiff cannot demonstrate that, prior to his March 12, 2009, fall, his right leg weakness, if left unattended, posed a serious risk to his future health. Defendants contend that Plaintiff was given three (3) health/activity profiles within the nine (9) months preceding his fall, and none of these profiles indicated that he had any serious weakness in his lower extremities. Defendants also contend that two (2) of Plaintiff's examinations, including one on March 3, 2009, revealed mild to moderate pain and restrictions in his legs, and he was given medication to relieve the pain and swelling. Defendants allege that there is no objective medical evidence to indicate that Plaintiff's right leg weakness posed a serious risk to his health prior to his fall on March 12, 2009. Defendants also allege that, even if Plaintiff could show that he had an objectively serious medical need, he cannot demonstrate that any of the Defendants knew of and ignored a serious risk to Plaintiff's health. Specifically, Defendants Jarriel and Johnson assert that Plaintiff cannot show that, had these two (2) Defendants been advised that Plaintiff had a bottom bunk and bottom range profile, they knew that this profile was anything more than a means to provide comfort to Plaintiff. Defendants Jarriel and Johnson aver that if they had learned the day before Plaintiff fell that his profile had not been fulfilled, Plaintiff cannot show a one-day delay in fulfilling

AO 72A
(Rev. 8/82)

his profile amounted to a constitutional violation. Defendants Thompson and Henry state that Plaintiff informed them of his March 3, 2009, profile before he fell, but Plaintiff cannot show that either of them acted with deliberate indifference to his health. Rather, Defendants Thompson and Henry assert that they spoke with Cathy Martin, who was responsible for moving inmates after the issuance of new profiles, and she told them she was working on moving Plaintiff.

Plaintiff asserts that Defendants "appeared to have had notice, and knew, but had failed to and neglected to do their duty" before he fell on March 12, 2009. (Doc. No. 27, p. 7). Plaintiff contends that he told Defendants on numerous occasions about his bottom bunk and bottom range profile. Plaintiff also contends that Defendants admit that they failed to do what was required of them. Plaintiff further contends that Defendants Jarriel and Johnson knew that the medical department does not enter into the system that an inmate has a serious medical need when they issue profiles. Plaintiff alleges that the pain, swelling, and discomfort he feels are sufficient to make his medical needs "serious." (Id. at p. 11).

The Eighth Amendment's proscription against cruel and unusual punishment imposes a constitutional duty upon prison officials to take reasonable measures to guarantee the safety of prison inmates. "'To show a violation of [his] Eighth Amendment rights, [a p]laintiff must produce sufficient evidence of (1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation.'" Smith v. Reg'l Dir. of Fla. Dep't of Corr., 368 F. App'x 9, 14 (11th Cir. 2010) (quoting Purcell ex rel. Estate of Morgan v. Toombs County, Ga., 400 F.3d 1313,1319 (11th Cir. 2005)). "To be deliberately indifferent a prison official must know of and disregard 'an excessive

risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" Id. (quoting Purcell, 400 F.3d at 1319-20). Whether a substantial risk of serious harm exists so that the Eighth Amendment might be violated involves a legal rule that takes form through its application to facts. For summary judgment purposes, all disputed facts are resolved in accord with the plaintiff's view of the facts. Purcell, 400 F.3d at 1320. However, "simple negligence is not actionable under § 1983, and a plaintiff must allege a conscious or callous indifference to a prisoner's rights." Smith, 368 F. App'x at 14.

Like any deliberate indifference claim, a plaintiff must satisfy both an objective and a subjective inquiry. Chandler v. Crosby, 379 F.3d 1278, 1289-90 (11th Cir. 2004). Under the objective component, a prisoner must prove the condition he complains of is sufficiently serious to violate the Eighth Amendment. Hudson v. McMillian, 503 U.S. 1, 8 (1992). "Specifically, a prisoner must prove a serious medical need or the denial of the minimal civilized measure of life's necessities." Miller v. King, 384 F.3d 1248, 1260-61 (11th Cir. 2004). As for the subjective component, "the prisoner must prove that the prison official acted with 'deliberate indifference.'" Id. (quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994)). To prove deliberate indifference, the prisoner must show that prison officials '"acted with a sufficiently culpable state of mind'" with regard to the serious prison condition or serious medical need in issue. Id. (quoting Chandler, 379 F.3d at 1289-90).

Defendants Jarriel and Johnson state in their Affidavits that only the Medical Department can issue a medical profile, and in their positions as Warden and Deputy

Warden of Care and Treatment, respectively, they had no authority to issue a medical profile. Defendants Jarriel and Johnson also state that the only way they would know whether an inmate received a new profile was if the inmate or someone from the Medical Department informed them of the profile. Defendants Jarriel and Johnson declare that it is their understanding that the vast majority of bottom bunk and/or bottom range profiles are issued so that inmates with "walking and lower body orthopedic issues could be more comfortable[,]" and that inmates "who had urgent and/or very serious medical issues regarding their ability to walk or stand would be taken to an outside hospital or transferred to a specialized medical facility . . . for specialized treatment that could not be provided at Smith State Prison." (Doc. No. 21-5, p. 3, ¶ 6; Doc. No. 21-6, p. 3, ¶ 7). Defendants Jarriel and Johnson aver that they did not review Plaintiff's medical records or have any discussions with anyone regarding Plaintiff's profile prior to his fall on March 12, 2009, fall, and they do not remember Plaintiff telling them about his profile before his fall. Defendants Jarriel and Johnson also aver that, had Plaintiff told them his profile had not been fulfilled, they would have contacted Cathy Martin, the officer who moves inmates based on the issuance of new profiles. Defendants Jarriel and Johnson further aver that they would not have assumed Plaintiff was in need of any urgent or serious medical treatment or that his profile was issued for a reason other than to provide him with comfort, even if they had known about Plaintiff's profile being unfulfilled. Finally, Defendants Jarriel and Johnson aver that, even if they were aware of Plaintiff's bottom bunk and bottom range profile before Plaintiff's fall on March 12, 2009, they had no reason to believe Plaintiff "was at a serious risk of falling

AO 72A
(Rev. 8/82)

down a staircase or that his continued housing on the upper range posed any serious risk to his health." (Id. at p. 4, ¶ 8; Doc. No. 21-5, p. 4, ¶ 7).

In their Affidavits, Defendants Thompson and Henry declare that Plaintiff informed them of his bottom bunk and bottom range profile before March 12, 2009, and that they both contacted Cathy Martin concerning the status of Plaintiff's housing situation. Defendants Thompson and Henry state Cathy Martin said she was "working on moving" Plaintiff, but neither she nor anyone else informed them that Plaintiff was in need of urgent or serious medical treatment. (Doc. No. 21-7, p. 3, ¶ 7; Doc. No. 21-8, p. 3, ¶ 7). Defendants Thompson and Henry aver that they assumed Plaintiff's profile was issued to provide him more comfort and not because his health was endangered by remaining housed on the upper range. Defendants Thompson and Henry also aver that they had no reason to believe that Plaintiff was at risk of falling down a staircase or that his continued housing on the upper range posed a serious risk to his health.

Defendants also submitted the Affidavit of Dr. Zellner Young, the Medical Director at Smith State Prison. Dr. Young states that Plaintiff was given a physical examination and a health/activity profile upon his arrival at Smith State Prison in August 2008. Dr. Zellner declares that Plaintiff's strength level in his lower extremities was 1, which is the strongest level on a 1 to 4 scale, and Plaintiff's strength level was the same in November 2008. Dr. Zellner also declares that Nurse Cassandra Hower saw Plaintiff on March 3, 2009, and assessed him with "tenderness and crepitation with movement in his right leg and observed that his range of motion was full but apparently painful." (Doc. No. 21-4, p. 3, ¶ 7). Dr. Zellner avers that, based on this examination, he started Plaintiff on another medication and ordered a bottom bunk and bottom tier profile for

AO 72A
(Rev. 8/82)

one (1) year. Dr. Zellner declares that he ordered the bottom range and bottom bunk profile "solely to ease the mild to moderate pain and swelling [Plaintiff] was having in his right knee; at that time I did not believe that [Plaintiff] was at any serious risk of falling down a flight of stairs or falling while descending from a top bunk." (Id. at p. 4, ¶ 8). Dr. Zellner states that, had he had any reason to believe that Plaintiff's right knee was so weak or painful that it posed a serious risk to his safety, he would have taken additional steps to help him, including getting x-rays or an MRI, further limiting Plaintiff's health/activity profile, and/or referring him to outside treatment facilities.

Plaintiff states in his Affidavit that he spoke with Defendants on several occasions about his leg and the pain he was suffering and about having to climb up and down stairs to get to call-out, yard call, and the chow hall, and Defendants told him they would get back in touch with Plaintiff later. Plaintiff also states that Defendant Jarriel told him on one (1) occasion that he was going to have "to make it" where he was and that the prison was "not Burger King where [you] can have it [your] way." (Doc. No. 27, p. 19, ¶ 8). Plaintiff declares that Defendant Henry told him she could not help him unless Defendant Jarriel or Defendant Johnson approved his move to a lower range and then she would still have to talk to Defendant Thompson to get the proper paperwork in place for Plaintiff's move. Plaintiff avers that he showed Defendants Thompson and Henry the profile which had been ordered for him on March 3, 2009. Plaintiff also avers that he spoke with Defendants Jarriel and Johnson, who assured him that he needed to settle down and stop worrying them about his leg. Plaintiff states that he fell down a flight of stairs on March 12, 2009, after his leg went out on him, and, as a

AO 72A
(Rev. 8/82)

result, he broke a bone. Plaintiff also states that he had to remain in the top range before being moved to the bottom range four (4) days later.

Plaintiff has not overcome his burden of showing a genuine issue of material fact. Viewing the evidence in the light most favorable to Plaintiff, as the Court must do, Plaintiff has shown that Defendants knew that he had some medical problems with his leg and that he had been issued a bottom range and bottom bunk profile. However, there is no evidence that Defendants knew Plaintiff's medical problems were so serious as to pose a serious risk to his safety or health or that Plaintiff's profile was issued for any reason other than his comfort. In short, Plaintiff has not shown that there remains an issue for a trier of fact's determination of whether Defendants were deliberately indifferent to his safety or health.

It is unnecessary to address the remaining portions of Defendants' Motion.

## CONCLUSION

Based on the foregoing, it is my **RECOMMENDATION** that Defendants' Motion for Summary Judgment be **GRANTED** and that Plaintiff's Complaint be **DISMISSED**.

**SO ORDERED**, this _17th_ day of August, 2010.

JAMES E. GRAHAM
UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev. 8/82)